UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x

COLSON JEAN-LOUIS,

                     Plaintiff,

         -against-

CITY OF NEW YORK, JOHN AND JANE
DOE CORRECTIONAL OFFICERS 1-15,

                  Defendants.

----------------------------------------------------------------- x

**COMPLAINT**

Jury Trial Demanded

## NATURE OF THE ACTION

1.      This is an action to recover money damages arising out of the violation of Plaintiff's rights under the Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States.

3.      This Court's jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343.

4.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

**JURY DEMAND**

5.      Plaintiff demands a trial by jury in this action pursuant to Federal Rule of Civil Procedure ("FRCP") 38.

**PARTIES**

6.      Plaintiff Colson Jean-Louis was in custody of the New York City Department of Corrections at the time of the incident discussed in this Complaint. He has since been released.

7.      Defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.      Defendant City of New York maintains the New York City Department of Corrections (hereinafter "NYDOC"), a duly authorized public authority and/or corrections department, authorized to perform all functions of a corrections department as per the applicable sections of the aforementioned municipal corporation, the City of New York.

9.      John/Jane Doe Corrections Officers 1-15, at all times relevant herein, were duly sworn officers, employees and agents of the DOC and were acting under the supervision of said department and according to their official duties.  They are sued in their individual capacities.

10.     That at all times hereinafter mentioned Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York and/or the City of New York.

11.     Each and all of the acts of the Individual Defendants were done by said Defendants while acting within the scope of their employment by Defendant City of New York.

## STATEMENT OF FACTS

12.     On or about May 20, 2015, Mr. Jean-Louis was incarcerated at Rikers Island at the Anna M. Kross Center ("AMKC").

13.     Earlier that week, Corrections Officers had placed the Plaintiff's AMKC Housing Unit on lockdown because they believed that an inmate there allegedly possessed a cellular telephone.  At no time did they suspect or have any reason to suspect Plaintiff possessed the item or was involved.

14.     There were roughly thirty cells in the Housing Unit and the Corrections Officers had already subjected Plaintiff and other inmates to repeated cell and body searches throughout the lockdown.

15.     Despite the Corrections Officers repeated indiscriminate searches, the Corrections Officers were unable to find the alleged telephone.  They remained without suspicion or reason to suspect that Plaintiff was involved.

16.     On or around May 20, 2015, Doe Defendant Corrections Officers arrived in the Housing Unit and announced that they were going to conduct another search for the phone.  Doe Defendant Corrections Officers had dogs and MK-9, a kind of pepper spray. Among the Doe Defendant Corrections Officers were members of the Emergency Security Unit ("ESU").

17.     Doe Defendants began their search with the inmate in the first cell in the Housing Unit.

18.     Plaintiff and all other inmates could hear commotion as the inmate in the first cell was sprayed and dragged out of his cell so that it could be searched.

19.     Doe Defendants then worked their way through the Housing Unit cell-by-cell.  Plaintiff heard Doe Defendants spraying and striking other inmates.

20.     On information and belief, the Doe Defendants conducted the cell searches in two teams, with each team handling one side of the Housing Unit.

21.     On information and belief, three or four Doe Defendants entered each cell to physically drag out its occupant, while still other Doe Defendants conducted the search.

22.     By the time Doe Defendants reached Plaintiff's cell, Plaintiff was afraid of what he supposed would be certain assault.  The terror he felt as Defendants worked their way to his cell was alone torturous.

23.     In order to signal his absolute compliance with Doe Defendants'

intended search, as Doe Defendants stepped in front of Plaintiff's cell, Plaintiff was against the back wall of his cell in a submissive position.

24.     As Doe Defendants stepped in front of Plaintiff's cell, Plaintiff repeated aloud over and over again, in sum and substance, that he would comply with their instructions.

25.     Despite Plaintiff's submission and compliance, Doe Defendants entered the cell, sprayed Plaintiff with MK-9 just as they had indiscriminately sprayed other inmates, kicked and stomped him, and dragged him to the hallway outside his cell.

26.     As best Plaintiff can recollect, at least two Doe Defendants came into his cell and committed the aforementioned assault.

27.     Plaintiff vomited and suffered burning as a result of the MK-9.  Doe Defendants' assault caused him other physical injury as well including, but not limited to, back, leg and eye injuries.

28.     Doe Defendants then took the inmates from the Housing Unit to "intake," an area at AMKC where inmates are processed for discipline.  Plaintiff estimates that this transport by itself, due to the volume of inmates affected who also had to be transported, took roughly an hour, during which time he was in pain and suffered great burning and itching to his skin and eyes as a consequence of the chemical assault.

29.     In intake, a DOC investigative team took photographs of Plaintiff's face.

30.    Doe Defendants were deliberately indifferent to Plaintiff's serious medical needs caused by Doe Defendants' own assault, placing Plaintiff at substantial risk of serious physical injury due.   For example, what little treatment Doe Defendants provided Plaintiff did not include adequately cleaning the MK-9 off of him, despite the fact that the chemicals continued to aggravate his eye and skin injuries.  Plaintiff was not permitted to shower off the MK-9 while in intake.  Instead, Plaintiff and the other inmates were given containers of water and another liquid which may have been milk to daub the MK-9 off of their bodies as best they could.

31.    Plaintiff was in intake for roughly one day during which time all of his injuries caused him great pain, but in particular the chemical assault injuries caused him needless pain as he required but did not receive treatment.

32.    Doe Defendants then put Plaintiff in solitary confinement despite the fact that Doe Defendants had no particularized suspicion that Plaintiff or, on information and belief, any of the inmates in the Housing Unit, had the alleged telephone.

33.    On information and belief Doe Defendants never found the alleged telephone.  It is certain that Doe Defendants did not find the alleged phone or any contraband in Plaintiff's cell and, on information and belief, Doe Defendants never alleged that they did.

34.    Doe Defendants' placement of Plaintiff in solitary confinement occurred

without first issuing him an infraction report let alone providing him with a hearing where he was able to defend himself with the benefit of due process.

35.     On information and belief, Doe Defendants held roughly 50% of the inmates from the Housing Unit affected by the incident in punitive segregation. Plaintiff has no knowledge where the other inmates were taken.

36.     Doe Defendants held Plaintiff in solitary confinement for ten days during which his access to food, recreation, hygiene and more were restricted and during which time Plaintiff never received a hearing or notice that one would be held.

37.     Doe Defendants then transferred Plaintiff out of AMKC to a New York State Correctional Facility.

38.     Plaintiff never received any medical treatment while on Rikers Island besides the meager treatment described herein.

39.     While in the care of New York State Department of Corrections, Plaintiff received a medical review and X-rays, and the medical personnel fitted him with a special boot to immobilize his leg.

40.     All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York, including, without limitation, the inadequate screening, hiring, retaining, training and supervising of its employees. This inadequate screening, hiring, retaining, training and supervising of its employees, as demonstrated in the instant case, results in incidents during which Corrections

Officers such as Individual Defendants in this case, act without regard for or knowledge of individuals' constitutional rights in their performance of their duties.

41.     Plaintiff's injuries are not the result of an isolated incident.  Indeed, as this Complaint alleges, Plaintiff was just one of many inmates who suffered similar injuries that day.  This fact—the repeated violations of individuals' constitutional rights all around Plaintiff in the same manner as Plaintiff's own were violated— supports the allegation of the City's insufficient screening, hiring, retaining, training and supervising of its applicants and actual COs.

42.     On information and belief, this incident of indiscriminate constitutional violations as a means to finding contraband is not an outlier event.   The allegation that it may be a recurring problem which adequate screening, training and discipline may address may be inferred again, from the fact that the mass violations here appeared not to have given Individual Defendants here any observed pause.

43.     In addition, the fact that it may be a recurring problem is evidenced in recent news reports about legal actions addressing and reports studying DOC's employees' violation of rights in other contexts.  These rights violations include, but are not limited to, the unequal application of rules to LGBT prisoners, inadequate medical care for serious medical needs, and excessive use of force against juvenile prisoners.  In each of these contexts, as in the context of the violations Plaintiff

suffered here, it stands to reason that the City's dedication of resources to training, supervision and discipline would aid in preventing such abuses in the first instance. See, e.g., Lambda Legal, Lambda Legal Joins Federal Lawsuit After Anti-Gay Attack at Rikers Island, Oct. 29, 2015, at

http://www.lambdalegal.org/blog/20151029_antigay-attack-rikers-island (describing DOC officers' refusal to permit a hug and a kiss between men despite the agency's general visitation policy permitting such demonstrations of affection) (last accessed July 2, 2016); Gary Hunter, Abysmal Medical Care at Rikers Island, Prison Legal News, July 7, 2015, at

https://www.prisonlegalnews.org/news/2015/jul/7/deep-seated-culture-violence-and-abysmal-medical-care-rikers-island/ (discussing various examples of Rikers inmates dying and/or suffering severe physical injury as a result of officer indifference) (last accessed July 2, 2016); Feds to Oversee Reforms at New York's Rikers Island Jail Complex, at

http://america.aljazeera.com/articles/2015/6/19/monitor-to-oversee-reforms-at-rikers-island.html (discussing a settlement between the U.S. DOJ and the NYC DOC permitting a federal monitor to oversee Rikers' treatment of juvenile detainees in the aftermath of a federal study showing the use of routine excessive force against the department's juvenile charges) (last accessed July 2, 2016); Reuven Blau and Dareh

Gregorian, <u>Rikers Island's Cycle Of Violence Violates Teen Inmates' Constitutional Rights: DOJ</u>, New York Daily News, Aug. 4, 2014, at

http://www.nydailynews.com/new-york/rikers-island-cycle-violence-violates-teen-inmates-constitutional-rights-doj-article-1.1891302 (last accessed July 2, 2016) (discussing SDNY USAO report criticizing the fact that DOC employees routinely wrongfully beat adolescent prisoners when they step "even an inch out of line");

44.    Defendant City of New York is thus aware that its improper training and customs and policies have often resulted in a deprivation of individuals' constitutional rights.  Despite such notice, Defendant City of New York has failed to take corrective action.  This failure caused Individual Defendants in this case to violate Plaintiff's constitutional rights.

45.    Moreover, on information and belief, Defendant City of New York was aware, prior to the incident, that the Individual Defendants lacked the objectivity, temperament, maturity, discretion and disposition to be employed as corrections officers.  Despite such notice, Defendant City of New York has retained these officers, and failed to adequately train and supervise them.

46.    All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

47.    All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, and in violation of 42 U.S.C. § 1983.

48.    The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as corrections officers, with the entire actual and/or apparent authority attendant thereto, pursuant to the customs, usages, practices, procedures and the rules of the Defendant City of New York and the NYC DOC, under the supervision of ranking officers of said department.

49.    Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

50.    As a result of the foregoing, Plaintiff is entitled to compensatory and punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## FIRST CLAIM
## 42 U.S.C. § 1983

51.     Plaintiff repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

52.     Defendants, by their conduct toward Plaintiff alleged herein, violated Plaintiff's rights guaranteed by 42 U.S.C. § 1983, the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States.

53.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiff of his constitutional rights.

54.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SECOND CLAIM
## EXCESSIVE FORCE

55.     Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

56.     Defendants violated Plaintiff's Eighth Amendment rights because they used unjustifiable force against Plaintiff, which was objectively sufficiently serious to support such a claim and because they had a sufficiently culpable subjective state of mind at the time.

57.    The fact that Defendants used such force indiscriminately upon a multitude of inmates in the Housing Unit with no articulable justification demonstrates their state of mind.  The fact that Defendants used such force upon Plaintiff with no articulable justification demonstrates their state of mind.

58.    The incident was an unnecessary and wanton infliction of pain upon Plaintiff.

59.    Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

60.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## THIRD CLAIM
## CRUEL AND UNUSUAL PUNISHMENT

61.    Plaintiff repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

62.    Defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

63.    Defendants' actions against Plaintiff were arbitrary in the same way that their actions against Plaintiff's fellow inmates were arbitrary and not tailored as a

reaction to any particularized threat or suspicion of wrongdoing.  In addition, even if Defendants were able to articulate some theory as to why Plaintiff should have been the target of their search that day, Defendants' actions were disproportionately severe relative to the circumstances insofar as Plaintiff had committed no infraction and posed no threat.

64.    Defendants inflicted cruel and unusual mental and emotional punishment upon Plaintiff in that before their use of excessive force upon him, their use of excessive force upon other inmates in the housing unit placed him in a state of fear knowing that it would eventually be his turn as well.

65.    Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiff of his constitutional rights.

66.    As a direct and proximate result of Defendants' unlawful conduct, Mr. Dejesus sustained the damages hereinbefore alleged.

**FOURTH CLAIM**
**DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS**

67.    Plaintiff repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

68.    The Individual Defendants were deliberately indifferent to the fact that their actions created substantial risk of serious injury to Plaintiff.   In addition,

Individual Defendants were aware that in the aftermath of their assault, particularly the chemical aspect of that assault, Plaintiff was injured and that their failure to act or ineffectual action under those circumstances ignored his plight. Defendants' conscious disregard to the serious harm that Plaintiff had suffered also threatened to cause him even more substantial physical harm had the chemicals continued to damage Plaintiff's eyes and skin.

69.    Although it is true that in general a delay in providing medical treatment cannot by itself violate the Eighth Amendment, courts have held that an intentional delay in necessary medical care, amounting in effect to a form of punishment, is actionable. Here, Plaintiff alleges more than mere delay. He alleged intentional disregard for his need for medical care, not only with respect to the chemical assault, but also with respect to his other physical injuries caused when Defendants assaulted and dragged him, which injuries were not duly examined until Plaintiff arrived in a New York State Correctional Facility.

70.    Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiff of his constitutional rights.

71.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FIFTH CLAIM
## DUE PROCESS

72.     Plaintiff repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

73.     Individual Defendants also violated Plaintiff's due process rights when they seized his person and placed him in punitive segregation, where they then housed him for an extended period of time without ever providing him with a hearing before simply transferring him to a different facility.

74.     As described herein and as discovery will elaborate, Plaintiff's punitive segregation was materially worse from his and other inmates' typical existence in custody in a variety of categories, i.e., food, recreation, socialization, visits, personal hygiene, cell cleanliness, and more.  In addition, Plaintiff endured this material decline in his custodial living situation while suffering the poorly treated aftereffects of the chemical attack, which included itching and burning.  Although Plaintiff contends that the material decline in his custodial living conditions is alone a protected interest pursuant to the due process clause, he also contends that this is made even clearer when combined with the poor medical care he received, causing the material decline in his custodial living conditions to be all the more painful and uncomfortable.

75.    Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiff of his constitutional rights.

76.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SIXTH CLAIM
## FAILURE TO INTERVENE

77.    Plaintiff repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

78.    Many of the Individual Defendants that this action seeks to identify and hold accountable actively participated in the aforementioned unlawful conduct.  In addition, this action seeks to identify Individual Defendants who plainly observed the herein described unconstitutional conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

79.    Accordingly, Individual Defendants who failed to intervene violated the Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

80.    Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiff of his constitutional rights.

81.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SEVENTH CLAIM
## MONELL CLAIM

82.    Plaintiff repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

83.    Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

84.    The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the DOC included, but were not limited to, the inadequate screening, hiring, retaining, training and supervising of its employees that was the moving force behind the violation of Plaintiff's rights as described herein. As a result of the failure of the Defendant City of New York to properly recruit, screen, train, discipline and supervise its officers, including the Individual Defendants, Defendant City of New York has tacitly authorized, ratified and has been deliberately indifferent to, the acts and conduct complained of herein.

85.    The foregoing customs, policies, usages, practices, procedures and rules of the Defendant City of New York and the DOC constituted, <u>inter alia</u>, deliberate indifference to the safety, well-being and constitutional rights of Plaintiffs.

86.    The foregoing customs, polices, usages, practices, procedures and rules of Defendant City of New York and the DOC were the direct and proximate cause of the constitutional violations suffered by Plaintiff as described herein.

**PRAYER FOR RELIEF WHEREFORE**, Plaintiff respectfully requests:

A. An order entering judgment for Plaintiff against Defendants on each of their claims for relief;

B. Awards to Plaintiff for compensatory damages against all Defendants, jointly and severally, for their violation of his Fourth, Fifth, Eighth and Fourteenth Amendment rights, the amount to be determined at jury trial, which Plaintiff respectfully demands pursuant to FRCP 38;

C. Awards to Plaintiff of punitive damages against Defendants on the basis of their conscious wrongdoing and callous indifference to the constitutional rights and welfare of Plaintiff, the amount to be determined at jury trial, which Plaintiff respectfully demands pursuant to FRCP 38;

D. Awards to Plaintiff of costs, including reasonable attorneys' fees;

E. Such further relief as this Court deems just and proper.

DATED:     July 2, 2016
           New York, New York


                                        _____/s_____
                                        Ryan Lozar
                                        305 Broadway, 10th Floor
                                        New York, New York 10007
                                        (310) 867-1562
                                        ryanlozar@gmail.com

                                        *Attorney for Plaintiff*