UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
COLSON JEAN-LOUIS, et al.

                        Plaintiffs,                      16 cv 5275 (PKC)

        -against-

                                              OPINION AND ORDER
CITY OF NEW YORK, et al.,

                        Defendants.
------------------------------------------------------------x

CASTEL, U.S.D.J.

        This is a motion for an award of attorney's fees in a civil rights action brought under sections 1983 and 1988 of title 42 arising out of an incident at a New York City (the "City") correctional facility at Rikers Island in which MK-9, a type of pepper spray, was deployed. Among other considerations, the Court will be required to construe the provisions of the Prison Litigation Reform Act of 1995 ("PLRA") that on its face limit attorney's fees awards in an action brought by a prisoner. 42 U.S.C. § 1997e(d)(2).

        The use of force incident occurred on May 20, 2015, in a unit placed on lockdown because an inmate was believed to be in possession of contraband in the form of a cell phone. The sole plaintiff in the action as originally filed, Colson Jean-Louis, alleged that fifteen John or Jane Doe defendants, members of an Emergency Security Unit, "sprayed [Jean-Louis] with MK-9 just as they had indiscriminately sprayed other inmates, kicked and stomped him, and dragged him to the hallway outside his cell." (Compl. ¶25.) Jean-Louis, the single plaintiff, was not a prisoner at the time the action was filed and was represented by Ryan Lozar, Esq., who maintains a solo law practice.

One month and nineteen days after the action was commenced, Lozar attempted to amend the complaint to add eighteen additional plaintiffs and name ten correctional officers as defendants.[1]  At or about this time Ilissa Brownstein, Esq. entered a notice of appearance for all plaintiffs. (Doc. 9.)   Lozar, in his declaration in support of the attorney's fees application, states that the additional eighteen plaintiffs had been represented by Brownstein and had filed notices of claims with the City. (Declaration of Ryan Lozar ("Lozar Decl.") ¶32.)  Brownstein endeavored to negotiate a pre-litigation settlement with the City but was unsuccessful. (Id. ¶33.)  Lozar agreed to file an amended complaint with the eighteen additional plaintiffs added.  (Id. ¶34.)  Details were included in the amended pleading concerning the physical injuries experienced by each plaintiff (First Am. Compl. ¶49 (Doc. 8)), and the actions of particular defendants. (E.g., id. ¶¶57-62.)

At a pretrial conference, a case management plan was proposed by the parties and adopted by the Court setting a discovery schedule ending August 18, 2017. (Doc. 41.)  Fact discovery was set to close in August 2017.  The parties wrote for an extension until December 22, 2017, which the Court granted.  (Doc. 47.) The joint letter motion for extension of discovery stated that

> each one of the nineteen plaintiffs had significant medical records which needed to be collected before they could be meaningfully questioned about the incident at deposition. Although the parties have exchanged significant document discovery, additional time is needed to complete depositions of the nineteen plaintiffs and the eight individually-named defendants. Moreover, because many of the plaintiffs are currently in the custody of New York State and are located at a number of different facilities, the parties require additional time to coordinate the scheduling of plaintiffs' depositions with each facility.

---

[1] The material point is that continuously since August 21, 2016, the eighteen additional plaintiffs have been co-plaintiffs or have sought to be co-plaintiffs of Jean-Louis.  Lozar attempted to file a First Amended Complaint (Doc. 8) on August 21, 2016, and the Clerk's Office noted several technical deficiencies.  Nevertheless, defendants answered the pleading on September 26, 2016. (Doc. 10.) A Second Amended Complaint was filed on November 18, 2016. (Doc. 11.)  Inexplicably, a First Amended Complaint was filed December 8, 2016. (Doc. 8.)

(Doc. 46.) (footnote omitted) On August 10, 2017, Juliene Drei Munar, Esq., whose office is located in the same building as Lozar's, entered a notice of appearance for all plaintiffs. (Doc. 45.)

In or about November 2017, defendants made a Rule 68, Fed. R. Civ. P., offer of judgment to each plaintiff in the amount of $1,001.00 "plus reasonable attorneys' fees, expenses, and costs to the date of this offer for plaintiff's federal claims." (E.g., Doc. 61-1.)  From January 12, 2018 through January 16, 2018, each of the nineteen plaintiffs accepted the offers.

The parties remain unable to agree on the amount of the attorney's fees and costs and plaintiffs have moved for an award.

DISCUSSION

A Court may award reasonable attorney's fees to a prevailing party in an action brought under section 1983. 42 U.S.C. § 1988(b).  To qualify as a prevailing party, the party must have obtained "at least some relief on the merits of his claim." Farrar v. Hobby, 506 U.S. 103, 110 (1992) (quoting Hewitt v. Helms, 482 U.S. 755, 760 (1987)); see Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res., 532 U.S. 598, 603-04 (2001).  Here, each of the nineteen plaintiffs is a prevailing party because they received monetary relief on their claims. The offers of judgment made plain that they were offered on all, not less than all, of each plaintiff's claims, although attorney's fees, under the terms of the offer, were limited to federal claims.  (E.g., Doc. 61-1.)

In deciding how much to award the Court must consider whether the plaintiff achieved a "level of success that makes the hours reasonably expended a satisfactory basis for making a fee award[.]" Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).  The Court must also determine an appropriate allocation between fees on the federal claim, where the statute allows an

3

award of attorney's fees, and the state claims that do not.  Additionally, it must decide whether and to what extent the statutory cap under the PLRA limits the award to certain plaintiffs. 42 U.S.C. § 1997e(d)(2).

A.  Reasonable Hourly Rates

The starting point is to set a reasonable hourly rate for the attorneys.  Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008). "The reasonable hourly rate is the rate a paying client would be willing to pay" and in determining this rate the Court should consider "all of the case-specific variables . . . ." Id.  In determining an appropriate hourly rate, "the district court should consider, among others, the Johnson factors . . . ." Id. (referencing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 92–93 (1989)).[2]

This Court has observed that "[r]ates found reasonable by courts in this District for experienced civil rights attorneys appear to cluster in the $350–450 per hour range." Salama v. City of New York, 13 cv 9006 (PKC), 2015 WL 4111873, at *2 (S.D.N.Y. July 8, 2015) (collecting cases).

Ryan Lozar seeks an hourly rate of $400 per hour.  He is a 2003 graduate of Georgetown University Law Center and former mid-level associate at the firm of Kramer Levin

---

[2] The Johnson factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Arbor Hill, 522 F.3d at 186 n.3 (citing Johnson, 488 F.2d at 717–19).

Naftalis & Frankel.  He clerked in the Eastern District of New York and the District of Puerto Rico and had a fellowship with the Reporters Committee for Freedom of the Press. He has served as a Special Assistant United States Attorney in the Southern District of California. He has litigated or is presently litigating approximately forty section 1983 and/or section 1988 actions in the Southern and Eastern Districts of New York.  He has been awarded $400 per hour in a Fair Labor Standards Act case before Judge Pauley, see Order, Vasquez v. Fast Labor Inc., 16 cv 2163(WHP) (S.D.N.Y. Oct. 14, 2016) (Doc. 69) (incorporating by reference Settlement Agreement, Vasquez v. Fast Labor Inc., 16 cv 2163(WHP) (S.D.N.Y. Oct. 8, 2016) (Doc. 67)), and in a civil rights action before Judge Oetken, see Williams v. City of New York, 16 cv 233 (JPO), 2017 WL 1906899, at *2 (S.D.N.Y. May 9, 2017.)

Ilissa Brownstein, also a 2003 graduate of Georgetown University Law Center, seeks a rate of $500 per hour. She has worked in the Criminal Defense Division of the Legal Aid Society.  Brownstein claims expertise in both criminal defense work and civil rights litigation, though her experience in representing plaintiffs in section 1983 or 1988 cases does not purport to be as extensive as Lozar's.

Juliene Drei Munar is a 2014 graduate of NYU School of Law and has worked at several New York firms before moving to California.  Munar seeks a rate of $325 per hour.

Considering the submissions of the parties, the range commonly awarded in this District and all other case-specific variables, the Court concludes that for the work on this case the rates of $400 per hour for Lozar, $385 for Brownstein and $275 for Munar are appropriate.

B.  Hours Reasonably Expended on Federal Claims

Lozar has come forward with daily timesheets documenting 263.3 hours on the case, Brownstein's timesheets reflect 128 hours and Munar's timesheets reflect 50 hours.   The

5

time spent included drafting discovery requests and record release requests, reviewing and analyzing the 5,500 pages of discovery material produced to plaintiffs, listening and watching to audio and video discovery, following up on purported discovery deficiencies by defendants, researching the characteristics and impact of MK-9, the pepper spray used, seeking out toxicologists as possible expert witnesses and "preparing to defend and defending approximately ten" depositions (Lozar Decl. ¶38(p).), and discussing the offers of judgment with the nineteen plaintiffs.

Some of the hours were spent before a notice of appearance was filed. The Court finds nothing inappropriate or unreasonable in this regard. There is no principle of law that forecloses recovery of reasonable attorney's fees in investigating a claim, researching the law and drafting a complaint, even though no action was pending at the time.

C.   Work on the Fee Application

Plaintiffs also seek fees incurred for time spent preparing the motion in support of this fee application in the amounts of 9.8 hours for Lozar, 2.8 hours for Brownstein, 1.5 hours for Munar, and 5.2 hours for Lozar's work on the reply. The offer of judgment was limited to "reasonable attorneys' fees, expenses, and costs to the date of this offer for plaintiff's federal claims." (E.g., Doc. 61-1.)  Generally, fees incurred in preparing a fee application for section 1988 fees are recoverable. Weyant v. Okst, 198 F.3d 311, 316 (2d Cir.1999). But "Rule 68 offers of judgment and acceptances thereof are contracts to be interpreted according to ordinary contract principles." Steiner v. Lewmar, Inc., 816 F.3d 26, 31 (2d Cir. 2016). In construing an offer of judgment, the Second Circuit has relied upon the familiar principle that the meaning of a plain and unambiguous contract must be "determined from the four corners of the instrument . . . ." Goodheart Clothing Co. v. Laura Goodman Enters., Inc., 962 F.2d 268, 272 (2d

Cir. 1992) (quoting John D. Calamari & Joseph M. Perillo, Contracts 166–67 (3d ed. 1987)).  Here, the offer was limited to the fees incurred to "to the date of this offer. . . ."

Consistent with the weight of authority in this District, this Court will only award fees up through the date of the offers of judgment, November 30, 2017. See Williams, 2017 WL 1906899, at *4; Long v. City of New York, 09 cv 6099(AKH), 2010 U.S. Dist. LEXIS 81020, at *5-6 (S.D.N.Y. Aug. 9, 2010). But see Lee v. Santiago, 12 cv 2558 (PAE) (DF), 2013 WL 4830951, at *13 & nn.11-12 (S.D.N.Y. Sept. 10, 2013) (Engelmayer, J.); Rosado v. City of New York, 11 cv 4285(SAS), 2012 WL 955510, at *6 (S.D.N.Y. Mar. 15, 2012) (Scheindlin, J.).  The 19.3 hours spent on the initial and reply brief, a modest amount, will be denied.

D. Time Spent on State Law Claims

Quite appropriately, all plaintiffs elected to assert state law claims along with federal claims. In order to do so, a plaintiff must satisfy the notice of claim requirement of New York General Municipal Law § 50-e and may be required to sit for an examination under oath. See New York Gen. Mun. Law § 50-h. The City's offer of judgment included within its scope state law claims against the City of New York and its employees but its offer to pay reasonable fees and costs was expressly limited to the federal claims. (E.g., Doc 61-1.)  There is no fee shifting provision that would entitle a party to recover attorney's fees on its state law claims.  See Johnson v. City of New York, 05 cv 7519 (PKC), 2011 WL 2693234, at *6 (S.D.N.Y. June 30, 2011).  The additional or separate work attributable to the state law claims was minimal.

An allocation of time spent on state claims is appropriate. All state law claims were alleged in a single, five paragraph claim for relief.    Brownstein participated in the drafting of notices of claim and in the New York General Municipal Law § 50(h) examinations and seeks fees for the time incurred.  Plaintiffs offer no defense to the specific proposed reduction other than the

expression of their view that all work on all claims was inextricably intertwined. The Court disagrees and concludes that the time can easily be segregated. Brownstein's hours will be reduced by 33.7 hours, all incurred prior to joinder in the present action.

This Court concludes that the hours spent on the matter by the three attorneys are reasonable and any seeming duplication of effort, unnecessary effort or inadequate descriptions were inconsequential. The following hours were reasonably spent on the federal claim: Lozar, 263.3 hours; Brownstein, 94.3 hours (128 hours less 33.7 hours); and Munar, 50 hours. The hours spent were reasonable even considering the modest size of the award.

### E. The PLRA Cap

The matter of fixing reasonable attorney's fees in this case, however, does not end with a determination of the reasonable rates and reasonable hours spent on federal claims. The PLRA places a cap on the amount of fees that may be recovered in "any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title. . . ."[3]  42 U.S.C. § 1997e(d)(1).  A "prisoner" is a term that includes persons who have been accused of a crime. Id. § 1997e(h). Insofar as is relevant here, the statute requires that some portion of the monetary award to the plaintiff, up to 25%, should be applied to the attorney's fees and caps the overall fee award to 150% of the judgment. Thus for the thirteen[4] incarcerated plaintiffs the statute caps the award to 150% of $1,001.00, the

---

[3] Fees to a prevailing section 1983 plaintiff are authorized under 42 U.S.C. § 1988(b).

[4] The fee cap applies to actions brought by plaintiffs who are prisoners "at the time of filing." Perez v. Westchester Cty. Dep't. of Corr., 587 F.3d 143, 155 (2d Cir. 2009). Defendants assert that thirteen plaintiffs were prisoners at the time they joined the suit, and plaintiffs do not contest this assertion.

accepted offer of judgment to each incarcerated plaintiff, or $1,501.50.[5]  Plaintiffs assert that the PLRA fees cap ought not apply to any plaintiff because the original plaintiff, Jean-Louis, was not incarcerated at the time the action was commenced.

The Second Circuit has applied the PLRA fee cap in an action brought by a single state prisoner who prevailed on certain of his constitutional claims but was awarded damages of $1.00. Shepherd v. Goord, 662 F.3d 603, 606-07 (2d Cir. 2011).  The Court affirmed the district court's reduction of a $99,485.25 fee request to $1.50, or 150%, of the $1.00 judgment. Id. at 607. Because the statute also required that some amount of the fee award be allocated to the judgment and the district judge in Shepherd allocated 10%, or $0.10, to the judgment, the Circuit affirmed. Id. at 610. This further reduced the fee award to the prevailing plaintiff to $1.40. Id.

Plaintiffs cite three district court opinions in which courts declined to apply the PLRA fee cap to prisoner-plaintiffs who commenced an action together with non-prisoner-plaintiffs on the theory that an action brought by a prisoner and a non-prisoner is not an action "brought by" a prisoner pursuant to 42 U.S.C. § 1997e(d)(1).  See Young v. Ky. Dep't of Corr., 11 cv 396(JMH), 2015 WL 4756529 (E.D. Ky. Aug. 11, 2015) (action brought jointly by a prisoner and a non-prisoner); Hunter v. Cty. of Sacramento, 06 cv 457 (GEB), 2013 WL 5597134 (E.D. Cal. Oct. 11, 2013) (same); Turner v. Wilkinson, 92 F. Supp. 2d 697 (S.D. Ohio 1999) (same). These same courts noted the difficulty of making an allocation on the facts presented to them. Young, 2015 WL 4756529, at *1 ("[T]here would be no discernable way to separate the attorney's

---

[5] Defendants assert that the statute also limits the hourly rate to an amount no greater than 150% of the hourly rate set for court appointed counsel under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A.  Defendants calculate the maximum hourly rate at $198.  Defendants rely on 42 U.S.C. § 1997e(d)(3), which states "[n]o award of attorney's fees in an action described [above] shall be based on an hourly rate greater than 150[%] of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel."  Plaintiffs do not dispute defendants' calculation of the CJA rate for this District.

fees expended on behalf of the two plaintiffs . . . ."); <u>Hunter</u>, 2013 WL 5597134, at \*10 ("[E]ven if the PLRA limitations do apply under such circumstances, the Court perceives of no logical way to separate the attorney's fees expended on behalf of the two plaintiffs.") (internal quotation marks and alterations omitted); <u>Turner</u>, 92 F. Supp. 2d at 704 (similar).

   The Fourth Circuit was presented with something of the obverse question to the one presented here, whether a non-prisoner magazine publisher was subject to the PLRA fee cap where the non-prisoner intervened in an action originally commenced by two prisoners. <u>Montcalm Pub. Corp. v. Virginia</u>, 199 F.3d 168, 170 (4th Cir. 1999). The Court concluded that the non-prisoner was subject to the cap because "[u]nquestionably, the case at hand is one 'brought by a prisoner.'" <u>Id.</u> (quoting 42 U.S.C. § 1997e(d)(1)).

   This Court concludes that when a prisoner joins an action as a co-plaintiff, any attorney's work done on his behalf is subject to the PLRA fee cap.  The Court begins with the statutory language and endeavors to find its "plain and unambiguous meaning." <u>Catskill Mountains Chapter of Trout Unlimited, Inc. v. Envtl. Prot. Agency</u>, 846 F.3d 492, 512 (2d Cir. 2017) (quoting <u>Louis Vuitton Malletier S.A. v. LY USA, Inc.</u>, 676 F.3d 83, 108 (2d Cir. 2012)). The plain meaning "does not turn solely on dictionary definitions of [the statute's] component words," but is also determined by "the specific context in which that language is used, and the broader context of the statute as a whole." <u>Yates v. United States</u>, ___ U.S. ___, 135 S.Ct. 1074, 1081-82 (2015) (plurality opinion) (internal quotation marks omitted).

   The statute by its terms is applicable to "any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title. . . ." 42 U.S.C. § 1997e(d)(1).  It uses no limiting or qualifying language that would make it applicable only to actions initially or originally commenced by a

prisoner.  The construction urged by plaintiffs would lead to the absurd and peculiar result of allowing avoidance of the cap by locating a single, non-prisoner to commence the action and then amending as of right the next day to add a host of prisoner-plaintiffs. To the extent there is ambiguity in the phrase "any action brought by a prisoner," the statute should be construed to avoid absurd results.  Troll Co. v. Uneeda Doll Co., 483 F.3d 150, 160 (2d Cir.  2007). The goal of lawmakers in enacting the PLRA fee cap was "reducing marginal or frivolous prisoner civil rights lawsuits and protecting the public fisc." Wilkins v. Gaddy, 734 F.3d 344, 349 (4th Cir. 2013).  It was intended to impose "substantial restrictions" on fee awards to prevailing prisoners.  Shepherd, 662 F.3d at 606 (internal quotation marks omitted).  The construction tendered by plaintiffs runs counter to that goal.

Neither the First Amended Complaint nor the answer to the First Amended Complaint draws any distinction between the single plaintiff, Jean-Louis, who brought claims in the original complaint against John and Jane Does 1-15, and the eighteen other plaintiffs who brought claims in the First Amended Complaints. (Docs. 8 & 9.)  The claims of these plaintiffs were simply not asserted, initiated or brought in any action until they joined in the amended pleading.  To "bring" an action is synonymous with to "institute" an action.  Webster's Third New International Dictionary (unabridged) (Merriam-Webster 2018) (online); see Black's Law Dictionary (10th ed. 2014) (defining to "bring an action" as "[t]o sue; institute legal proceedings"). When the complaint in this action was amended to assert claims by the thirteen incarcerated plaintiffs, the "action" became an "action brought by a prisoner."  This conclusion is supported by Rule 20(a)(1), Fed. R. Civ. P., that provides that "[p]ersons may join in one action as plaintiffs if: (A) they assert any right to relief jointly [or] severally . . . arising out of the same . . .

occurrence . . . ."[6] Here, the "one action" was every bit brought by the later joining plaintiffs as it was by the first plaintiff.

The Court does not read the statute to require or permit the application of the cap to claims by non-prisoners joined with those of prisoners. A reasoned allocation between work on the non-prisoners' claims and the prisoners' claims is possible on the record before this Court. Courts routinely are required to allocate fees or make fee reductions on a percentage basis for a host of disparate reasons. See, e.g., Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) ("Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'") (first quoting Hensley, 461 U.S. at 437 n.12, then quoting N.Y. Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983)); U.S. Football League v. Nat'l Football League, 887 F.2d 408, 415 (2d Cir. 1989); One Beacon Ins. Co. v. Old Williamsburg Candle Corp., 03 cv 6901(LAK), 2006 WL 3230029, at *2 (S.D.N.Y. Nov. 8, 2006).[7]

The Court concludes that much of attorney Lozar's time would have been spent pursing the claim of the plaintiff Jean-Louis through to conclusion if no prisoner had ever been joined as a co-plaintiff. Reviewing the time spent by Lozar, the Court concludes that none of his time from December 11, 2015, when he first met with Jean-Louis, up to August 17, 2016, when

---

[6] The outcome is no different if the joinder is viewed as permissive intervention as plaintiff urges. "When a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party." Schneider v. Dumbarton Developers, Inc., 767 F.2d 1007, 1017 (D.C. Cir. 1985).

[7] This Court acknowledges that it "has the discretion to award fees for the entire litigation where the claims are inextricably intertwined and involve a common core of facts or [are] based on related legal theories." Dominic v. Consol. Edison Co., 822 F.2d 1249, 1259 (2d Cir. 1987) (internal quotation marks omitted).

he was first contacted by Brownstein about her clients joining the action, is subject to the cap. After August 17, 2016, a substantial portion of the time spent by Lozar in pursuing Jean-Louis's claim, including identifying and serving defendants, obtaining and reviewing documents and generally preparing the case, would have been necessary if the case had remained a claim by a single non-prisoner.  The Court concludes that it is reasonable to allocate 20% of his time after August 17, 2016 to the work on behalf of the thirteen incarcerated plaintiffs and hence subject to the cap.  But none of his time before August 17, 2016, and 80% of his time after August 17, 2016, is not subject to the PLRA cap.

Ilissa Brownstein represented eighteen individuals (thirteen of whom were incarcerated) who would eventually join the action commenced by Jean-Louis.   When her pre-litigation efforts to settle their cases failed, her eighteen clients joined the existing action as plaintiffs.  All work by Brownstein up to the August 21, 2016 attempted filing of the First Amended Complaint (less the 33.7 hours spent on the state law claims) will be subject to a reasonable allocation on the basis that 13/18ths is subject to the cap and 5/18ths of the time is not subject to the cap.  After her clients joined in the federal complaint and she filed a notice of appearance for all plaintiffs, Brownstein acquired a nineteenth client, Jean-Louis.   From August 21, 2016, to conclusion, Brownstein's efforts also benefitted him and therefore 13/19ths will be subject to the cap and 6/19ths of her time will not be subject to the cap.

Juliene Drei Munar first appeared in the action on August 10, 2017, and her work benefited all nineteen plaintiffs.  Munar's time is reasonably allocated with 13/19ths subject to the cap and 6/19ths not subject to the cap. For all attorneys, time subject to the PLRA fee cap will be billed at an hourly rate no greater than $198, pursuant to 42 U.S.C. § 1997e(d)(3).

F.   PLRA Allocation of a Portion of Fees to the Judgment

The PLRA requires a Court to allocate some portion of the fee award to the judgment recovered but not to exceed 25%. 42 U.S.C. §1997e(d)(2).  In Shepherd, 662 F.3d at 606, the Court approved an allocation of 10% to the amount the judgment in favor of the plaintiff. In the case of the thirteen prisoner-plaintiffs, the Court views an allocation of 10% of the amount of the offered judgment to be reasonable because any greater allocation would seriously undermine the intended compensatory purpose of the award and any lesser allocation would undermine the purpose of the PLRA.

G.  Costs and Expenses

The sole ground asserted by defendants for challenging the modest $2,633.34 of costs and expenses sought in this action is a claimed lack of adequate documentation.  Plaintiffs have broken down each category, including the $400 filing fee, process server fees, AT&T conference fees and medical record fees.   The requested sum for costs and expenses is awarded in full.

CONCLUSION

Having laid out the basis for awarding fees and expenses and the appropriate allocations, the arithmetic application of the allocations will be left in the first instance to counsel. Plaintiffs' counsel shall submit a proposed order together with an affidavit reflecting the proper calculations within 14 days.  Defendants will have 7 days to respond.

14

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       October 25, 2018